JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appellant, Charley Bowling, appeals from his conviction for one count of felonious assault in violation of R.C.2903.11(A)(2). The appellant was sentenced to a term of incarceration of four years. The appellant was also convicted of firearm specifications and for these specifications the court imposed a sentence of one year and three years to be served consecutively with each other and consecutively with the sentence for the underlying felonious assault.
 {¶ 2} On September 28, 2001, Robert Thorne was shot through the elbow as he walked down Walton Street, in Cleveland, on his way to the store. Mr. Thorne heard two "pops" and then immediately felt pain in his arm (T. 225). He was transported to MetroGeneral Hospital where the doctors irrigated and stitched the wound. Mr. Thorne is a window washer by trade and the pain he still experiences in his arm is problematic.
 {¶ 3} Sixteen-year-old Andre Kent and the appellant were in the appellant's apartment drinking beer with another friend of the appellant's on the evening of September 28, 2001. The appellant moved into the upstairs portion of the home occupied by Kent approximately one week before this incident. The three left the apartment in order to purchase marijuana for the third man. Kent testified that it was this third person who supplied the two loaded pistols. The pistol carried by the appellant was a .38 and the one carried by Kent was a .380. Kent further testified that prior to leaving the apartment to purchase the marijuana he and the appellant discussed robbing someone for their money.
 {¶ 4} The three proceeded to purchase the marijuana on Clark Avenue. Kent testified that at this point the plan was to return to the appellant's apartment. However, after the marijuana was purchased, two friends of Kent's ran towards them. Although the testimony is somewhat difficult to follow, it seems as though these two were apparently being chased by others. Kent and the appellant determined to assist and, along with Kent's friends, began to chase the people running towards them. Once they were on Walton, Kent and the appellant shot their pistols. Kent testified that he shot into the air, but the appellant shot with his arm pointed straight in front of him. The people they were chasing were not right in front of the gun, but rather were further down the street and running in all directions. Kent testified that no one was in front of the appellant's firearm. On cross-examination, Kent affirmed the statement he made to the police that the disagreement was over whose corner it was from which to sell drugs.
 {¶ 5} After the shots were fired, the appellant and Kent ran through backyards. They wiped their fingerprints off of the weapons and hid them under some tires in one of the backyards. The two were arrested by the police as they continued to flee. With his father present, Kent made a statement to the police. Kent testified that there was no plan between him and the appellant to shoot anyone, it just so happened that both of them fired their weapons (T. 276).
 {¶ 6} The prosecutor made clear for the record that Kent was charged for this offense in Juvenile Court for attempted murder and felonious assault with a firearm specification. In consideration for his testimony in the appellant's trial, the state agreed not to attempt to bind him over for trial as an adult and agreed to dismiss the attempted murder charge. Kent agreed to provide truthful testimony and agreed to enter a guilty plea to felonious assault.
 {¶ 7} Mary Margaret May is a resident of Walton Street. She was sitting on the porch relaxing that evening when she heard kids swearing and cussing (T. 219). Ms. May observed a person with a gun, holding it straight out towards the street, and then heard the noise of the gun firing. Ms. May is unable to identify the person with the firearm due to poor eyesight. Alexis Galarce, another resident of Walton Street, corroborated Ms. May's testimony. Five or six people were arguing outside of his home and he asked those involved to take it somewhere else (T. 280). Mr. Galarce observed two men, one white and one black, raise guns, point them straight out, and fire them at a bike[1]. Mr. Galarce identified the appellant in court as the white man who raised a gun straight out and fired it towards the man on the bike.
 {¶ 8} Martin Forte, fourteen years of age, testified that he and his friends had a dispute with some other young men. By chance they ran into Kent and the appellant, whom he met for the first time that day. Forte asked the two to join him and his friends in the dispute. Both Kent and the appellant held weapons. Forte heard two shots and observed sparks from the guns. Both Kent and the appellant held their guns straight out shooting at someone on a bike. Forte testified that he did not overhear any conversation indicating an intent to shoot anyone.
 {¶ 9} Cleveland Police Detective Maria Matos and her partner Detective Martinez were involved in the arrest of the appellant. The officers were searching the area for the suspects when a report on the police radio indicated that an anonymous caller stated that the suspects were on Erin Avenue. The officers located the appellant and Kent behind what appeared to be an abandoned vehicle. Detective Matos testified that the appellant was not wearing his shirt at the time of arrest. Neither Kent nor the appellant were armed at the time the officers placed them under arrest. The detectives were concerned about the location of the firearms because there is a school in the area. Eventually the appellant made a statement to the police which led them to the firearms. There were no fingerprints on the weapons. A spent casing from the .380 weapon was found, but subsequently misplaced.
 {¶ 10} The appellant has asserted three assignments of error. In the first assignment of error, the appellant argues that his conviction was against the manifest weight of the evidence. The appellant states that the evidence was contradictory and highly unreliable and that the prosecution failed to introduce evidence supporting the mens rea of "knowingly."
 {¶ 11} In State v. Nields (2001), 93 Ohio St.3d 6, the court held that, as to the manifest weight of the evidence, the issue is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Getsy (1998), 84 Ohio St.3d 180, 193-194, citing Statev. Eley (1978), 56 Ohio St.2d 169, syllabus. In State v. Thompkins
(1997), 78 Ohio St.3d 380, the Court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594, "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact. Thompkins, (Cook, J., concurring) citing to State v.DeHass (1967), 10 Ohio St.2d 230.
 {¶ 12} The appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2). The legislature has defined this offense, as applicable here, by stating that no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance. The element of knowingly is defined in R.C. 2901.22(B) as follows: a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.
 {¶ 13} In the matter now before this court, the testimony of Ms. May was that a person, with a gun pointed straight out towards the street, fired the weapon. Mr. Galarce identified the appellant as the white man who raised and fired his weapon straight out at someone on a motorcycle. Likewise, Martin Forte testified that the appellant fired his weapon holding it straight out in front of him and shot at the bike. With this evidence, the prosecution met its burden of persuasion. The jury was provided evidence, which if believed, permitted it to find that the appellant knowingly fired his weapon at a person and that he was aware that this conduct would probably cause a certain result, i.e., an injury to another person.
 {¶ 14} The appellant's first assignment of error is overruled.
 {¶ 15} In the second assignment of error, the appellant asserts that the trial court erred and denied the appellant his Constitutional right to due process when it denied his request for a jury instruction on the issue of accident.
 {¶ 16} In State v. Paletta, 2001-Ohio-1667, Lorain App. No. 00CA007717, the court noted than an accident is an event that occurs unintentionally and without any design or purpose to bring it about.State v. Fears (1999), 86 Ohio St.3d 329, 340, 715 N.E.2d 136. In order for an accident to occur, it must have been a physical event which would not be reasonably anticipated as a result of a lawful act. Paletta, supra. See also State v. Denton (Sept. 30, 1993), Franklin App. No. 93AP-603. In State v. Ross (1999), 135 Ohio App.3d 262, 733 N.E.2d 659, the court explained that an accident is that which is unintentional and unwilled and implies a lack of criminal culpability. State v. Gore (Feb. 18, 1997), Franklin App. No. 96APC05-606. An accident will be found only if the defendant's actions or the resulting injury were a "mere physical happening or event, out of the order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." State v. Glossip (Mar. 18, 1991), Butler App. No. CA90-07-138 (citing 4 Ohio Jury Instructions 75, Section 411.01[2]). To be entitled to a jury instruction on accident, there be evidence to support the argument that appellant acted lawfully and that the result was unintended. State v. Poole (1973), 33 Ohio St.2d 18, 20, 294 N.E.2d 888.
 {¶ 17} As in Paletta, supra, there is no question in this case that the appellant committed an unlawful act, namely discharging his gun on a street and straight into an area where people were located. An instruction on accident was not appropriate. This court, therefore, concludes that the trial court did not abuse its discretion when it excluded a jury instruction on accident.
 {¶ 18} The appellant's second assignment of error is overruled.
 {¶ 19} In the third assignment of error the appellant posits that the trial court erred when it instructed the jury on aiding and abetting where no evidence on the record supported such a finding. The appellant states that there was no evidence, direct or circumstantial, that the appellant and Kent acted in concert in committing the crime of felonious assault. Essentially, the appellant is contesting the sufficiency of the evidence.
 {¶ 20} In State v. Thompkins (1997), 78 Ohio St.3d 380, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins, supra, citing to Tibbs v. Florida
(1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
 {¶ 21} In State v. Johnson, 2001-Ohio-1336, 93 Ohio St.3d 240,754 N.E.2d 796, the Ohio Supreme Court cited to State v. Widner (1982),69 Ohio St.2d 267, 269, 23 Ohio Op.3d 265, 266, 431 N.E.2d 1025, 1027 and reiterated that the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor. The purpose of this maxim is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission. However, the court also noted that participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. SeeState v. Pruett (1971), 28 Ohio App.2d 29, 34, 57 Ohio Op.2d 38, 41,273 N.E.2d 884, 887.
The testimony in the case sub judice reveals that appellant and Kent were both drinking together; that they left the appellant's apartment to purchase drugs; that both carried weapons; that each knew the other carried a weapon; they both fired weapons at or near the same time; they fled the scene together; and they hid their weapons together. Additionally, there was testimony that both the appellant and Kent fired shots directly at someone on a bike. This evidence of the conduct of the appellant and Kent before and after the felonious assault was sufficient, if believed by the jury, to support the verdict.
 {¶ 22} The appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, Jr., J., and DIANE KARPINSKI, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The testimony does not specify whether the "bike" is a bicycle or a motorcycle.