[Cite as *State v. Wilson*, 2011-Ohio-5653.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 96098

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JESSIE WILSON, JR.

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540498

**BEFORE:**  Stewart, J., Blackmon, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**  November 3, 2011

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road, Suite 300
Westlake, OH    44145


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Marcus L. Wainwright
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113


MELODY J. STEWART, J.:

{¶ 1}  A jury found defendant-appellant Jessie Wilson, Jr. guilty of attempted murder and felonious assault on evidence that he discharged a gun at a police officer from close range during a foot chase.  Wilson complains on appeal not only that there was insufficient evidence to show that he possessed and discharged a firearm, but that the jury's verdict on those points was against the manifest weight of the evidence.  He also complains that the court erroneously allowed a police officer to testify to a statement he made after being apprehended but before he had voluntarily waived his right against self-incrimination.

I

**{¶ 2}** Wilson first argues that the state failed to provide sufficient evidence to prove his convictions.

A

**{¶ 3}** We determine whether the evidence is sufficient to sustain a verdict by examining the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶78, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

B

**{¶ 4}** The state charged Wilson with attempted murder under R.C. 2903.02(A), which states that "[n]o person shall purposely cause the death of another ***."  It also charged Wilson with felonious assault under R.C. 2903.11(A)(2), which stated that "[n]o person shall knowingly *** [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

**{¶ 5}** The state's evidence showed that police officers were on patrol in a marked zone car as a result of several calls reporting drug activity in a neighborhood.  They were on the lookout for a blue, Ford Thunderbird automobile that had been the subject of specific complaints.  A dashboard-mounted video camera on the police car shows the officers slowing as they passed a parked, blue Thunderbird on a side street.  The police car reversed and pulled behind the Thunderbird.  There were three occupants in the car:

a driver and passenger in the front seat and Wilson sitting in the back seat. Wilson exited the car and the officers did the same. Without warning, Wilson then bolted across the street. One of the officers followed. When the officer was within arm's reach of Wilson, Wilson produced a black handgun and fired a shot. The officer immediately moved out of the way and heard a second shot. He rolled to the ground and pulled his service weapon, momentarily losing sight of Wilson. When the officer recovered, he resumed pursuit on foot and radioed that shots had been fired and gave Wilson's description. As other officers converged in response to the pursuing officer's reports, they cornered and apprehended Wilson.

{¶ 6} Viewing this evidence in a light most favorable to the state, we conclude that the pursuing officer's testimony that Wilson discharged a gun at him was sufficient to prove both the attempted murder and felonious assault charges. Because a firearm is a deadly weapon, see R.C. 2923.11(B)(1), it may be inferred from the act of discharging a firearm in another's direction that the shooter had the specific intent to kill. *State v. Mackey* (Dec. 9, 1999), 8th Dist. No. 75300, citing *State v. Widner* (1982), 69 Ohio St.2d 267, 431 N.E.2d 1025. And if the act of discharging a firearm at another is sufficient proof of intent to kill, it necessarily follows that the felonious assault element of attempting to cause physical harm is likewise established.[1]

---

[1] The court correctly merged the attempted murder and felonious assault counts at sentencing under R.C. 2941.25(A) because the offenses could be committed by the same conduct and were, in fact, committed by "a single act, committed with a single state of mind." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶49.

## II

**{¶ 7}** Wilson next argues that his convictions were against the manifest weight of the evidence because the police were unable to find the firearm he used despite days of searching a fairly confined chase area and that gunshot residue tests on his hands yielded no results. He maintains these deficiencies show that the state failed to prove that he possessed a firearm as predicate for both offenses.

**{¶ 8}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.

**{¶ 9}** Could any trier of fact rationally believe the officer's testimony despite there being no corroborating physical evidence of a gun? The dashboard-mounted video

showed that as Wilson fled, he was holding the waistband of his pants in a manner that could be viewed as his attempt to keep a firearm from falling from his pants. The audio on the recording distinctly features the sound of two gunshots. The sound of two gunshots was consistent with the pursuing officer's radio reports that Wilson had fired shots at him with a 9mm handgun. The officer's statements were very much like present sense impressions because the circumstances under which they were made left little doubt as to the veracity of the officer's observations — being in hot pursuit of a suspect it was highly unlikely that the officer had the presence of mind to fabricate a claim that Wilson fired shots. These statements, coupled with evidence documenting the sound of gunshots, were credible evidence from which the jury could find that Wilson fired a gun despite the inability to recover the gun or its shell casings.

{¶ 10} The narrow standard of review we employ in appeals challenging the sufficiency and manifest weight of the evidence requires us to determine whether *any* rational trier of fact could view the evidence in this case as establishing the essential elements of the charged offense and whether the verdict is contrary to all of the evidence. Had there been no video and audio evidence describing the circumstances of the officer's pursuit, Wilson might have prevailed in his arguments. It is even possible that a different jury, presented with the same evidence, might have found Wilson's arguments compelling. But we are unable to say that no rational trier could have viewed the evidence presented as proof that Wilson possessed and discharged a firearm.

III

{¶ 11} Wilson next argues that he was deprived of a fair trial because the court allowed a police officer who questioned Wilson immediately after his capture to testify that Wilson said: "All I know, I'm going to jail for a long time." Wilson maintains that he had not been read his *Miranda* rights before making this statement and, even though he failed to seek suppression of the statement prior to trial, the state failed to show that he validly waived his right against self-incrimination.

{¶ 12} Crim.R. 12(C)(3) provides that certain motions to suppress evidence must be filed before trial. The failure by the defendant to raise defenses or objections "or to make requests that must be made prior to trial *** shall constitute waiver of the defenses or objections," unless the court grants relief from the waiver for good cause shown. See Crim.R. 12(H); *State v. Campbell* (1994), 69 Ohio St.3d 38, 44, 630 N.E.2d 339 ("By failing to file a motion to suppress illegally obtained evidence, a defendant waives any objection to its admission"); *State v. Chandler*, 8th Dist. No. 81817, 2003-Ohio-6037, ¶32 ("[b]y failing to file a motion to suppress illegally obtained evidence, a defendant waives any objection to its admission.")

{¶ 13} Wilson argues that to the extent he is deemed to have waived his right to seek suppression of statements he made to the police by failing to file a motion to suppress evidence, the court nonetheless had the obligation to inquire into the factual basis for the waiver. We reject this argument because the right against self-incrimination "is not a self-executing mechanism; it can be affirmatively waived, or lost" if an individual fails to assert it "in a timely fashion." *Maness v. Meyers* (1975), 419 U.S.

449, 466, 95 S.Ct. 584, 42 L.Ed.2d 574.    In other words, "the privilege against self-incrimination must be claimed." *Emspak v. United States* (1955), 349 U.S. 190, 196, 75 S.Ct. 687, 99 L.Ed. 997.  A motion to suppress evidence is the mechanism by which the accused asserts claimed violations of the right against self-incrimination.  Wilson, through defense counsel, is presumed to know that this mechanism is available, so the court had no independent obligation to inquire into whether his failure to file a motion to suppress was itself knowing and voluntary.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.  The       court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, P.J., CONCURS;
MARY J. BOYLE, J., CONCURS IN JUDGMENT
ONLY