[Cite as *State v. Newman*, 2019-Ohio-3394.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-131 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-796 |
| | : | |
| NATHANIEL S. NEWMAN | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of August, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

BRYAN SCOTT HICKS, Atty. Reg. No. 0065022, P.O. Box 359, Lebanon, Ohio 45036
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Nathaniel Newman appeals from a Clark County Common Pleas Court judgment that convicted him of grand theft under R.C. 2913.02. The judgment of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2} The State's evidence at trial established the following facts. At approximately 6:40 a.m. on December 4, 2017, Newman and Kevin Bowshier entered a Lowe's home improvement store and walked empty-handed to the outdoor power equipment department. As seen on surveillance video, after some discussion, each man brought a chainsaw from the shelf to the front return desk. Bowshier attempted to return one chainsaw in exchange for the other. Newman waited beside Bowshier, then eventually walked away. Head cashier Karly Schwenn would not complete the return because Bowshier could not produce a receipt or the credit card used for the alleged purchase. Bowshier picked up a chainsaw and walked out, setting off the security tag alarm, and prompting Schwenn to file a theft report with loss prevention manager Joseph Derringer. Derringer assembled a theft report including the video surveillance footage of Newman and Bowshier, and he called the police.

{¶ 3} At approximately 9:40 a.m. on the same date, Newman and Bowshier pulled into the lot of Sunbelt Rentals, adjacent to Lowe's. Sunbelt service mechanic Marvin Epperson was near the parking lot repairing a piece of equipment when the two men pulled up in a red Ford F-150 with a spare tire installed on the right-front. Newman exited the truck's passenger side, approached Epperson, and stated that they were "supposed to get that loader right there today," indicating a trailer and Bobcat loader. Epperson directed him to the storefront rental office. Newman returned to the vehicle, spoke with

Bowshier, then proceeded around the corner in the direction of the rental office.

{¶ 4} A few minutes later, Epperson watched as the two men hooked their truck to the trailer and Bobcat. Epperson noticed that the trailer's right rear tire was flat and the Bobcat had no chains or tie-downs, which was against regulations. Epperson also noted that the Ford F-150 was not legally permitted to tow the weight of the trailer and Bobcat.

{¶ 5} Once they left, Epperson quickly asked his manager, Ted Jeremy Sendlebach, if the men had rented the trailer and Bobcat. Sendlebach verified that no one had rented that equipment, and that the chains securing the Bobcat had been cut earlier.

{¶ 6} Springfield Police Officer Doug Green arrived and approached Epperson and Sendlebach about the incident at Sunbelt. Derringer came from next door, believing Officer Green had come for the incident at Lowe's. Hearing the description of Newman and Bowshier, Derringer retrieved from his office his theft report with still shots of the pair and the Ford F-150 in the parking lot. Epperson immediately confirmed that they were the two men he saw take the trailer and Bobcat.

{¶ 7} Sendlebach gave the police the relevant identifiers on the equipment and estimated the value of the trailer to be $9,000 and the Bobcat to be $41,000. Springfield Detective Ronnie Terry was able to identify Bowshier from the video surveillance and past familiarity. Detective Terry identified Newman through a police photo taken by Brookville police. Terry noted that the surveillance video showed that Bowshier was the driver and Newman was the passenger of the Ford F-150 in the parking lot and leaving with the trailer.

{¶ 8} On December 9, 2017, Officer Greene found the trailer and Bobcat in an alley

with the Sunbelt identifiers painted over.

{¶ 9} Newman was arrested and charged with one count of grand theft of the trailer and Bobcat pursuant to R.C. 2913.02(A)(1), a felony of the fourth degree. Bowshier was charged with one count of grand theft of the trailer and Bobcat and one count of theft of the chainsaw. Newman and Bowshier were tried together on September 18, 2018. After two days of testimony, the jury returned with a guilty verdict on all charges against Newman and Bowshier.

{¶ 10} On September 24, 2018, Newman did not appear for sentencing. After he was found and arrested, he was sentenced to 18 months in prison.

{¶ 11} On appeal, Newman's sole assignment of error argues that his conviction was not supported by sufficient evidence. Specifically, Newman argues that the State failed to prove beyond a reasonable doubt that he intended to steal the trailer and Bobcat from Sunbelt.

## II. Sufficiency of the Evidence

{¶ 12} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 13} Newman was convicted of grand theft in violation of R.C. 2913.02(A)(1),

which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." If the value of the property stolen is between $7,500 and $150,000, the offense constitutes grand theft, a felony of the fourth degree. R.C. 2913.02(B)(2).

{¶ 14} "The purpose with which a person does an act is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence." *State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205, ¶ 22 (2d Dist.), quoting *State v. Johnson*, 11th Dist. Lake No. 2006-L-259, 2007-Ohio-5783, ¶ 40. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 15} R.C. 2923.03 provides: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense. * * * Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender."

{¶ 16} Having reviewed the record in the light most favorable to the State, we conclude that the evidence presented was sufficient to prove beyond a reasonable doubt that Newman was guilty of grand theft. The evidence showed that Newman was present with Bowshier at Lowe's and Sunbelt on the morning of December 4, 2017. Newman concedes that he was the truck passenger at the scene. (Appellant's Brief at 6). The Ohio Supreme Court has held that " 'the mere presence of an accused at the scene of a crime

is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001), quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.* However, " '[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Id.* at 244, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884, 887 (4th Dist. 1971).

{¶ 17} Here, evidence showed that Newman had been in communication with Bowshier since the early morning of December 4, 2017, and at least two hours before arriving at Sunbelt. At Lowe's, Newman assisted Bowshier in carrying chainsaws belonging to Lowe's that Bowshier attempted to return. At Sunbelt, Newman claimed to Epperson that the Bobcat with the cut chain was reserved for him. After Epperson directed him to the rental office, he spoke to Bowshier before he (Newman) proceeded to walk toward the rental office. However, no transaction at the rental office took place. Newman later was seen by Epperson hooking up the trailer and Bobcat to the truck and leaving. Newman was not merely present during theft of the equipment, but actually participated in its removal.

{¶ 18} Viewing the evidence in the light most favorable to the prosecution, we find that evidence sufficient to support an inference that Newman purposefully assisted in committing the theft of the trailer and Bobcat. Pursuant to R.C. 2923.03, he could be prosecuted as a principal offender of the theft.

{¶ 19} Newman's assignment of error is overruled.

### III. Manifest Weight of the Evidence

{¶ 20} Newman also argues that he had no knowledge of a theft taking place when he hooked the trailer to the truck. According to him, the evidence supported an inference "that after Newman [was] told by Epperson that you have to go around front, he talked to Bowshier who informed him that he had already taken care of everything." (Appellant's Brief at 7). Although not expressly stated as such in his assignment of error, Newman's argument raises a weight-of-the-evidence challenge.

{¶ 21} A weight-of-the-evidence argument "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Jones*, 2d Dist. Montgomery No. 28179, 2019-Ohio-2940, ¶ 13, quoting *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *Jones* at ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Id.*, citing *State v. Bradley*, 2d Dist.

Champaign No. 97-CA-03, 1997 WL 691510, * 4 (Oct. 24, 1997).

**{¶ 23}** We find no manifest miscarriage of justice that requires the conviction of grand theft to be reversed. The jury had the opportunity to hear from multiple State's witnesses, including Schwenn and Derringer, regarding Newman's companionship with Bowshier in Lowe's. It also heard from Sendlebach regarding the unsecured Bobcat and from Epperson regarding his encounter with Newman. Based on the entire record, the jury could have reasonably concluded that Newman and his co-defendant, Bowshier, collaborated in a plan to take the trailer and Bobcat from Sunbelt that morning. Therefore, Newman's conviction was not against the manifest weight of the evidence.

## IV. Conclusion

**{¶ 24}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J. and DONOVAN, J., concur.

Copies sent to:

John M. Lintz
Bryan Scott Hicks
Hon. Douglas M. Rastatter